Remmel FANCHER and Devota Fancher, Plaintiffs-Appellants,

v.

SOUTHWEST MISSOURI TRUCK CENTER, INC., Defendant-Respondent.

No. 11808.

Missouri Court of Appeals, Southern District, Division Two.

June 12, 1981.

Richard D. Bender, Sherwood, Honecker & Bender, Springfield, for plaintiffs-appellants.

John R. Lewis, Springfield, for defendant-respondent.

BILLINGS, Judge.

Plaintiffs Remmel Fancher and Devota Fancher, husband and wife, were awarded damages by a Greene County jury for defendant's alleged negligence in the repair of their tractor truck. The trial court granted defendant's motion for a new trial on the ground plaintiffs failed to make a submissible case of negligence. We reverse and remand with directions to reinstate the verdict of the jury.

Plaintiffs contended the defendant was negligent because it installed the wrong gear ratio in one of the tractor's two differentials which resulted in gear breakage and resultant damage. It was, and is, defend-ant's position that its mechanics followed customary procedure in the installation of the gear ratio and, therefore, cannot be held liable for negligence.

■ In reviewing the single issue presented, we consider only that evidence most favorable to the plaintiffs, together with all reasonable inferences deducible therefrom, and cast aside defendant's evidence except that which aids plaintiffs. *Lifritz v. Sears, Roebuck and Company*, 472 S.W.2d 28 (Mo.App.1971).

Plaintiffs, residents of near Omaha, Arkansas, purchased a used 1973 Mack tractor truck in May 1978. Plaintiff Remmel Fancher was a commercial trucker and the tractor was used to pull a trailer. He did not know what gear ratios were in the two differentials, commonly referred to as the front rear end and back rear end, but had not experienced any difficulty or trouble in the operation of the tractor prior to the time he delivered it to the defendant to have the radiator repaired and checked for a possible leak in the rear end.

Defendant's repair facility is located in Springfield, Missouri, and defendant held itself out as an expert in the repair of large trucks, particularly Mack trucks. On October 3, 1978, the tractor truck was left with defendant for inspection and repair. A few days thereafter Fancher telephoned defendant to inquire if the work was completed. Defendant's employee advised Fancher that the truck had a "bad rear end"; that it would cost more to repair the rear end than the cost of a new one; that a new rear end would be guaranteed for six months and certain number of miles. Fancher authorized the installation of a new rear end.

On October 12, 1978, after defendant had completed the repairs, Fancher paid the defendant $3,277.64 for the work and drove the truck to his home. Thereafter, on the first over-the-road trip with the tractor-trailer unit, Fancher heard a "funny catching noise" from the area where the new rear end had been installed and experienced jerkiness in the operation of the truck. He took the truck to a Mack truck repair cen-

ter in El Paso, Texas, where it was discovered that the gear ratio installed by defendant in the front differential was of a different size than the gear ratio in the rear differential and this was causing the noise and difficulty in the tractor's operation. Defendant was notified of the problem by the El Paso repair center and authorized necessary repairs at its expense. Defendant then refused to pay the $1,483.90 charges of the El Paso repair center and Fancher paid the same. Fancher also incurred other consequential damages and the jury awarded plaintiffs a total of $4,066.35 by way of damages.

On tractor trucks such as plaintiffs', the two differentials operate in tandem. The gear ratio within a differential is controlled by the number of teeth of the gears which mesh together as those units spin and propel the vehicle. Unless the gear ratios of both differentials are the same, breakage and damage to the gears will occur. The gear ratio within a particular differential is ordinarily stamped by the manufacturer on the outside casing of the differential but it is common for truckers to have the original gear ratios changed in order that the truck can travel faster. The casings on the differentials on plaintiffs' truck were stamped 4.50 but in fact contained 4.17 gear ratios. Relying solely upon the stamped designation, defendant installed a 4.50 gear ratio in the front differential.

Defendant's parts and service director during 1978, testified that defendant had an exchange program for gear ratios and had changed the gear ratios in truck differentials and "we do quite a few of them." The witness said there were ten or more different gear ratios for truck differentials, ranging from 3 to 5 and above; that the smaller the gear ratio, the faster a truck would operate. He said it was defendant's practice, when gear ratios were changed, to grind off the stamping on the casing of the differential and re-stamp the casing so as to reflect the altered gear ratio. He stated the stamping on the casing was for "quick reference" but acknowledged the gear ratio within a particular differential could be determined by counting the teeth of the gears and checking this number against appropriate charts.[1] He admitted that once a differential was disassembled this visual and physical determination could be made in a matter of ten or fifteen minutes. When asked why this visual inspection was not performed when the front differential of plaintiffs' truck had been "pulled" he first said "normal standards", then "nothing prevented us from doing that", and then said the gears were "chewed up and everything else." He admitted that if the gears had been "all chewed up" that Fancher would have had trouble operating the truck before it was brought in for repairs. Fancher testified he was shown the removed gears by one of defendant's mechanics and there were no broken teeth on the gears.

Defendant seeks to support the trial court's ruling because its mechanics, none of whom testified, followed customary and standard procedure in relying upon the stamping on the front differential in replacing the gear ratio. Conversely, plaintiffs contend defendant failed to exercise the required degree of care in making the repairs to the differential by installing the wrong size gears and that a visual inspection of the removed gears would have prevented the error. Further, plaintiffs aver, the customary procedure relied upon by the defendant does not establish the legal standard of care and, consequently, does not absolve defendant of its negligence in repairing the truck. For reasons which follow, we agree with plaintiffs' position and rule the question of defendant's negligence was for the jury to decide.

■ Defendant was under a duty to repair plaintiffs' truck in a good and workmanlike manner, with reasonable care, skill, expediency and faithfulness, and a failure to exercise due care in making such repairs constitutes a tort and the rules of negli-

1. The El Paso repair center used this procedure and determined the gear ratios of the differentials.

gence apply.[2] *Harzfeld's, Inc. v. Otis Elevator Co.*, 114 F.Supp. 480 (W.D.Mo.1953); *Central & South. Truck Lines, Inc. v. Westfall GMC Truck*, 317 S.W.2d 841 (Mo.App. 1958); 38 Am.Jur.2d Garages, Etc. § 53; Annot. 92 A.L.R.2d 1408, 1412 (1963); 65 C.J.S. Negligence § 101 (1966); 61A C.J.S. Motor Vehicles § 730 (1970); Restatement (Second) of Torts § 404 (1965).

 The standard of care exacted by the law is an external and objective one and the law does not permit the defendant to make the determination of what is and what is not due care under the circumstances. *Hodges v. American Bakeries Company*, 412 S.W.2d 157 (Mo. banc 1967). And, custom or standard procedure, relied upon by defendant, while relevant and admissible, does not establish the legal standard of care. *Broadview Leasing Co. v. Cape Central Airways, Inc.*, 539 S.W.2d 553 (Mo.App. 1976); *Grosvener v. New York Cent. R. Co.*, 343 Mo. 611, 123 S.W.2d 173 (1938); *Low v. Park Price Company*, 95 Idaho 91, 503 P.2d 291 (1972); *Adkins v. Barrett*, 196 Or. 597, 250 P.2d 387 (1952); Restatement (Second) of Torts § 295A (1965). As stated by Mr. Justice Holmes in *Texas & Pac. Ry. Co. v. Behymer*, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed. 905 (1903): "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

Defendant, an expert in repairing trucks, undertook to repair plaintiffs' truck, including the installation of the proper gear ratio in the front differential. Defendant's inspection of the differential revealed it was a "bad rear end" and recommended the installation of a new one rather than fixing the old one. Under the evidence we have set forth a jury question was raised as to whether defendant, as a reasonable and prudent repairman, by and through its mechanics, should have visually inspected the old gears and determined their size when they were removed from the differential,

rather than, for "quick reference" simply looking at the stamping on the casing and installing a 4.50 gear ratio. Defendant knew plaintiffs' truck was a used one. Defendant knew that it was not uncommon for gear ratios in trucks to be changed and even had an exchange program for altering gear ratios. By counting the teeth of the removed old gears and checking a chart, the defendant could have determined that the removed gears had a 4.17 ratio. The jury could find, as they did, that a reasonable and prudent repairman would have or should have spent the ten to fifteen minutes to be certain the proper gear ratio was installed in the front differential and failure to exercise such care was negligence.

The judgment is reversed and the cause remanded to the trial court with directions to reinstate the verdict of the jury.

PREWITT, P. J., and HOGAN, J., concur.

MAUS, C. J., not participating.

2. Liability for defective repairs may also be predicated on a breach of contract to place a vehicle in a specified condition, a breach of warranty, or fraud. Annot. 92 A.L.R.2d 1408, 1421 (1963).