Sue Ann CARVER, Individually and James Richard Reifschneider, a minor, Michael Edward Reifschneider, a minor, and Kim Marie Reifschneider, a minor, by Sue Ann Carver, Natural Parent and Guardian, Plaintiffs-Appellants,

v.

William Michael SCHAFER, and Michael G. Mehiols, Defendants,

and

Frances C. Roberts, Defendant-Respondent.

No. 44983.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 8, 1983.

James B. Herd, Michael F. Heavey, St. Louis, for plaintiffs-appellants.

Edward P. Harrison, St. Louis, for defendant-respondent.

SNYDER, Judge.

This is an appeal from a judgment of the Circuit Court of the County of St. Louis, which dismissed appellants' petition for failure to state a cause of action. The petition sought damages for a wrongful death from a tavern keeper who appellants alleged sold drinks to an already intoxicated person, who caused the death of appellants' decedent. In Count III, plaintiffs-appellants relied on the *Illinois Dram Shop Act,* Ill.Ann. Stat., ch. 43, § 135 (Smith-Hurd 1944, 1982–83 Cum Supp.), and in Count V they asked the court to hold the tavern keeper liable under Missouri common law. The judgment is reversed and remanded in part and affirmed in part.

Appellants alleged that William M. Schafer was liable to appellant for the negligent operation of his motor vehicle which resulted in the wrongful death of James R. Reifschneider, and that defendants Frances C. Roberts and Michael G. Mehiols were also liable for the wrongful death of Mr. Reifschneider because Mr. Schafer, shortly before the accident, had consumed intoxicating beverages served at taverns owned by Ms. Roberts and Mr. Mehiols, when Mr. Schafer was already intoxicated. Mr. Reifschneider was the spouse of appellant Sue Ann Carver and the father of the minor children who are also appellants. Service of process was never obtained on Mr. Mehiols and he was dismissed from the lawsuit. Appellant reached a settlement with Mr. Schafer. Thus, the only remaining defendant is respondent Roberts, who has not filed a brief with this court.

Appellants charge the trial court erred in dismissing the petition because appellants stated a cause of action under both the Illinois Dram Shop Act and the Missouri common law.

■ The scope of review of a motion to dismiss requires an appellate court to treat all facts alleged by the petition as true, to construe the allegations favorably to appellants and to determine whether, upon that basis, the petition invokes principles of substantive law. *McCoy v. Liberty Foundry Co.,* 635 S.W.2d 60, 61–62[2, 3] (Mo.App. 1982). "A pleading should not be adjudged insufficient ... if the averments of the petition, accorded every reasonable and fair intendment, state a claim which can call for the invocation of principles of substantive law which may entitle [appellants] to relief." *Kersey v. Harbin,* 591 S.W.2d 745, 749[3] (Mo.App.1979).

The facts as alleged in appellant's petition may be briefly stated. On the date in question, Schafer, who is a resident of Missouri, drove his automobile into the State of Illinois. While in Illinois, Schafer patronized two taverns where he was served intoxicating liquors. The taverns were known as The Little Dover Inn and The Ten Pin Lounge, owned and operated by respondent Roberts and Michael G. Mehiols, respectively. The service of the intoxicating liquors led to the intoxication of Schafer or added to his previously existing state of intoxication. After imbibing the intoxicating liquors, Schafer returned to the State of Missouri, operating his automobile under the influence of the intoxicating liquors. Appellants' decedent, James R. Reifschneider, a police officer employed by St. Louis County, was struck and killed by the automobile operated by Schafer as Officer Reifschneider was standing on the shoulder of Interstate Highway 270 issuing a traffic violation summons to another motorist.

The only issue is whether appellants have a cause of action for negligence against respondent Roberts. This court holds that they do.

■ Actionable negligence consists of three elements: a duty owed by the defendant to the plaintiff, a breach of that duty by the defendant, and an injury to the plaintiff which is caused by the breach of the duty. *Nichols v. Blake,* 418 S.W.2d 188, 191[5, 6] (Mo.1967).

The first question is whether Roberts, a tavern owner, owed a duty to prevent the death of appellants' decedent. Here the tavern owner, according to the petition, sold alcoholic beverages to a person the tavern owner knew or should have known to be intoxicated. The tavern owner's patron subsequently caused the death of the decedent.

The common law rule was that a tavern owner could not be held liable for injuries to third persons which were caused by an intoxicated patron. The reason usually given was that the injuries were proximately caused by the imbibing of the intoxicating liquor by the patron and not by the sale of the beverages. *Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656, 657 (Ark.1965); *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566, 568 (Wis.1970); *Parsons v. Jow,* 480 P.2d 396, 397[1] (Wyo.1971); 45 Am.Jur.2d, Intoxicating Liquors § 553 (1969); 130 A.L.R. 352, 366 (1941).

In the context of the present case, to say that the decedent's death was not proximately caused by the sale of the intoxicating liquor would be the functional equivalent of stating that the tavern owner owed no duty to the decedent. See W.L. Prosser, Law of Torts § 42 (4th Ed.1971). Although stating the issue in terms of duty rather than proximate cause does not resolve the issue, " . . . it does serve to direct attention to the policy issues which determine the extent of the original obligation . . ." Id.

In some states, the common law rule has been abrogated by so called "dram shop acts." [1] On the other hand, some jurisdictions have declined invitations to hold a tavern owner liable for injuries to a third person caused by an intoxicated patron. [2]

1. See e.g., Ill.Ann.Stat., ch. 43 § 135 (Smith-Hurd 1944, 1982–83 Cum.Supp.); N.Y. General Obligations Law § 11–101 (McKinney 1978). In other states, the rule has been judicially overturned. *Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981); *Ono v. Applegate,* 62 Hawaii 131, 612 P.2d 533 (Haw.1980); *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (Idaho 1980); *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (Ind.1966); *Munford, Inc. v. Peterson,* 368 So.2d 213 (Miss.1979); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (N.J.1959); *Miller v. City of Portland,* 288 Or. 271, 604 P.2d 1261 (Or.1980).

2. *Lewis v. Wolf,* 122 Ariz. 567, 596 P.2d 705 (Ariz.App.1979); *Carr v. Turner, supra; Keaton v. Kroger Co.,* 143 Ga.App. 23, 237 S.E.2d 443 (Ga.App.1977); *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (Md.App.1981); *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (Neb.1976); *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (Nev.1969); *Marchiondo v. Roper,* 90 N.M. 367, 563 P.2d 1160 (N.M.1977); *Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178 (Wis.1979); *Parsons v. Jow, supra.*

Missouri has no dram shop act.[3] The question is whether this court will judicially recognize that a tavern owner owes a duty to third parties to refuse to sell liquor to an intoxicated person.

■ "The law enjoins upon each individual, in all human activities, the duty to exercise ordinary care ... for the safety of others, and this degree of care appertains to every human act, unless a different degree of care is prescribed by statute." *Ward v. City of Portageville,* 106 S.W.2d 497, 503[23, 24] (Mo.App.1937). Ordinary care requires the exercise of such precautions as are commensurate with the dangers reasonably to be anticipated under the circumstances. *De Mariano v. St. Louis Public Service Co.,* 340 S.W.2d 735, 743[7–10] (Mo.1960). "The standard of care exacted by the law is an external and objective one ..." *Fancher v. Southwest Missouri Truck Center, Inc.,* 618 S.W.2d 271, 274[3, 4] (Mo.App.1981).

Under the circumstances of the case under review, the question is to what extent is it reasonably to be anticipated that an intoxicated person who is served alcoholic beverages at a tavern will leave there, drive a motor vehicle while still intoxicated, and cause an accident? Travelling by car to and from a tavern is commonplace in current times. *Rappaport v. Nichols, supra* at 8[7, 8].

Drunken drivers are involved in a large percentage of the fatal automobile accidents in this country. "Drinking is indicated to be a factor in at least half of the fatal motor-vehicle accidents ..." National Safety Council, "Accident Facts," at 52 (1981 edition). Statistics in Missouri also lend credence to the view that the drunken driver is a factor in more than his fair share of the fatal accidents. "In 1981, of the 95,331 accident involved drivers, 10% were reportedly drinking and of the 1,135 fatal accident involved drivers, 20% were reportedly drinking." Mo. Highway and Transportation Department, Division of Mainte-

nance and Traffic, "Missouri State Highway System Traffic Accident Statistics," at 27 (1981 edition).

Indeed, one would have to be a hermit to be unaware of the carnage caused by drunken motorists. The problem was aptly described nearly twenty years ago:

Our highway safety problems have greatly increased. Death and destruction stalk our roads. The peaceful Sunday afternoon family drive through the hills has been abandoned by many as the result of brushes with near death at the hands of half-baked morons drunkenly weaving in and out of traffic at 80 or 90 miles per hour.

*Crull v. Gleb,* 382 S.W.2d 17, 23 (Mo.App. 1964).

Thus, it is foreseeable that a patron of a tavern would drive an automobile to and from the tavern. It is also foreseeable that a drunken driver would be more likely to be involved in an accident than a sober driver.

Despite the foreseeable consequences of selling intoxicating liquors to an intoxicated purchaser, many jurisdictions refuse to impose upon the tavern owner a common law duty not to sell liquor to a customer who is intoxicated.

One reason for courts refusing to do so is the legislature's failure to alter the old common law rule barring a tavern owner's liability when the legislature has had ample time to consider the question. *Felder v. Butler, supra* at 499. In *Felder v. Butler,* the Maryland Court of Appeals noted that thirty years had passed since the common law rule had been stated and that the state legislature had done nothing to change the rule. Id.; see also *State v. Hatfield,* 197 Md. 249, 78 A.2d 754 (Md.App.1951).

The old common law rule which imposed no duty on the tavern keeper has never been stated in Missouri. Cf. *Skinner v. Hughes,* 13 Mo. 440 (1850).

---

**3.** Until 1934 Missouri had a dram shop act which granted a civil right of action to any person who was injured by an intoxicated person against the party who caused the intoxica-

tion. § 4487 RSMo. 1929. The dram shop act was repealed in 1934 concurrently with the adoption of the new Liquor Control Law. Laws 1933–34, Extra Session, page 77.

■ Another reason given for denying a cause of action against a tavern owner is that holding the tavern owner liable would shift the burden of the loss from the intoxicated driver to the dispenser, which result "... is contrary to sound public policy." *Olsen v. Copeland, supra* at 181. However, the burden would not necessarily shift from the intoxicated driver to the tavern owner. Both parties contributed to the accident; therefore, assuming the negligence of both, they are joint tortfeasors. See *Shafir v. Sieben,* 233 S.W. 419, 424[10, 11] (Mo. banc 1921). The tavern owner may seek contribution from the drunken driver. See *Mo. Pac. Ry. Co. v. Whitehead and Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978).

The court in *Olsen v. Copeland* also raises the point that if the intoxicated driver is financially irresponsible, the dispenser of the alcoholic beverages will bear the entire judgment. "In such a situation the dispenser ... will certainly be bearing a burden wholly out of proportion to his culpability." 280 N.W.2d at 181.

What should be emphasized is that if the intoxicated driver is financially irresponsible and the tavern owner is immunized from liability, the burden will be borne by a party completely without fault, i.e., the innocent victim.

The question is not simply whether the dispenser's liability will be greater than his culpability, but rather whether requiring the tavern owner to bear liability will be a more just allocation of the burden than merely leaving the innocent victim to shoulder the loss.

It has also been said that "[t]he imposition of a common law duty of due care would create a situation rife with uncertainty and difficulty. If the commercial vendor is liable for negligence, does the host at a social gathering owe a duty to prospective victims of guests?" *Holmes v. Circo, supra* at 70 (Neb.1976).

First, this court is not concerned with the question of imposing liability upon hosts at a social gathering. A court does not rule on hypotheticals. Additional arguments may weigh in favor of not imposing liability on "the host of a social gathering." The sole concern is the dispensing of justice and the resolution of conflicts between the parties before the court.

Furthermore, the mere existence of possible legal issues arising out of other conceivable fact situations should not deter this court from finding a right of action belonging to appellants. Resolution of various legal issues on a case by case basis should prove no more difficult in the area of the liability of a dispenser of intoxicating liquors than in other areas of the law of torts.

The courts which have denied recovery have also cited problems of proof, particularly the problems of recognizing when a patron is intoxicated. See, *Holmes v. Circo, supra* at 70. "A jury of 12 will most likely have 12 different opinions on this question." *Olsen v. Copeland, supra* at 181. The problems of proof are not any different from those in other negligence cases.

The plaintiff will have to prove by a preponderance of the evidence that the person in question was, at the time, obviously, actually and apparently intoxicated in order to prove by a preponderance of the evidence that the bartender knew, or should have known, such fact. Furthermore, to be successful upon such a cause of action, the plaintiff would have to prove by a preponderance of the evidence that serving the additional intoxicating liquor, after the subject person was already obviously, actually and apparently intoxicated, was a contributing proximate cause of the ensuing injuries. Such proof is not outside of the competence of our judicial system.

*Lewis v. Wolf, supra* at 710.

Finally, most courts that have refused to recognize a cause of action against a tavern owner have stated that this type of case is more suitable for legislative than judicial action. *Carr v. Turner, supra* at 658[2]; *Keaton v. Kroger, Co., supra* at 448[5]; *Felder v. Butler, supra* at 499; *Holmes v. Circo, supra* at 70[6]; *Hamm v. Carson City Nugget, Inc., supra* at 359; *Marchiondo v.*

Roper, supra; Olsen v. Copeland, supra at 181; *Parsons v. Jow, supra* at 397–398[3]. Questions of public policy, it is said, are better left to the legislative branch of government. See, e.g., *Holmes v. Circo, supra* at 70[6]; *Hamm v. Carson City Nugget, Inc., supra* at 359.

The question presented here is arguably one of public policy, but it is also a question of common law negligence which is better resolved by the judiciary considering the long history of the development and refinement of negligence law by the courts.

Although resolution of public policy arguments is primarily a function of the legislature, a court's refusal to decide questions of public policy is a mistaken abdication of the function of a common law judge. "Every important principle which is developed by litigation is in fact and at bottom the result of more or less definitely understood views of public policy; most generally, to be sure, under our practice and traditions, the unconscious result of instinctive preferences and inarticulate convictions, but nonetheless traceable to views of public policy in the last analysis." O.W. Holmes, "The Common Law", 35–36 (1881).

The courts which decline to resolve the competing interests of dispensers and those injured by the dispensers' intoxicated patrons, see *Holmes v. Circo, supra* at 70[6], mistakenly ignore the role of the judiciary. "What else do courts do but balance competing interests? The law of torts is concerned with the allocation of losses arising out of human activities." *Lewis v. Wolf,* 596 P.2d at 709.

The public policy of Missouri is that intoxicated persons should not be served alcoholic beverages. Although § 311.310 RSMo. 1978 [4] cannot serve as a basis for liability because respondent Roberts is a resident of Illinois, the statute is indicative of Missouri public policy.

An appellate court of this state has already recognized that violation of a statute which forbids serving liquor to a minor may constitute negligence *per se*. *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333, 337[1] (Mo.App.1981); *Sampson* held that the parents of a minor may recover damages from a tavern owner who served liquor to the minor who died in an automobile accident resulting from the minor's intoxication.

This holding was extended in *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo. App.1981), where the court allowed a third party a cause of action against a tavern owner for injuries caused by an intoxicated minor who had been served liquor in the tavern.

The question in the case under review is one of simple negligence rather than of negligence *per se;* however, neither *Sampson* nor *Nesbitt* contains an indication that it is the public policy of this state to insulate tavern owners from civil damage suits.

The public policy of this state is expressed even more fundamentally in the general law of torts. Every person is required to take ordinary care against injuries reasonably to be anticipated. The death of Officer Reifschneider, or of any pedestrian entitled to be on the shoulder of a major thoroughfare, was reasonably to be anticipated in light of Mr. Schafer's allegedly intoxicated state of mind.

■ The standard of ordinary care imposed a duty upon respondent Roberts to avoid supplying Mr. Schafer with intoxicating liquor once it became apparent that Mr. Schafer was intoxicated. That the standard of ordinary care imposed such a duty upon Ms. Roberts is supported by the well-documented foreseeability of accidents caused by drunken drivers and the statutory policy expressed by § 311.310 RSMo. 1978. Therefore, Count V of appellant's petition stated a cause of action for simple negligence against respondent.

---

4. Section 311.310 RSMo. 1978 reads:

"Any licensee under this chapter, or his employee, who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever ... to any person intoxicated or any person appearing to be in a state of intoxication ... shall be deemed guilty of a misdemeanor ..."

■ Appellants argue that Count III of their petition was also erroneously dismissed because Count III states a cause of action under the Illinois Dram Shop Act. Ill.Ann.Stat., ch. 43, § 135 (Smith-Hurd 1944, 1982–83 Cum.Supp.). Under Illinois law, appellants could recover damages from respondent tavern owner for the wrongful death of appellant's decedent, subject to a $20,000 limit on the amount of the recovery.[5] No such limitation has been imposed in Missouri on actions against dram shop owners. Cf. *Sampson v. W.F. Enterprises, Inc., supra; Skinner v. Hughes, supra.* There is also no limitation on recovery for wrongful death in Missouri. See § 537.090 RSMo. 1978 (1982 Cum.Supp.). The laws of the two states are thus in conflict.

■ Pleading a theory of recovery under Missouri law in one count and another state's law in a separate count raises a choice of law issue. See *Kennedy v. Dixon,* 439 S.W.2d 173, 179–180 (Mo. banc 1969). Therefore, this court must make a choice of law between the limitation on recovery imposed by the Illinois Dram Shop Act and the full recovery permitted by Missouri law

under the wrongful death statute. § 537.-090 RSMo. 1978 (1982 Cum.Supp.). The Missouri law should apply.

The Missouri Supreme Court in 1969 adopted the rule set forth in § 145, Restatement (Second) Conflict of Laws and abandoned the long standing lex loci delicti rule for determining conflicts of law. *Kennedy v. Dixon, supra* at 184[6–8]. Choice of law in the field of torts since then has been resolved by applying the law of the state with the most significant relationship to the occurrence and the parties. The Restatement (Second) of Conflict of Laws sets forth the principles by which the "most significant relationship" is determined. See *Kennedy v. Dixon, supra* at 181; *Griggs v. Riley,* 489 S.W.2d 469 (Mo.App.1972); Restatement (Second) of Conflict of Laws §§ 6, 145.[6]

There is no Missouri statutory directive on a choice of law in the factual situation of the case under review. Therefore, the relevant factors listed in Restatement (Second) Conflict of Laws § 6(2) must be considered.[7]

---

**5.** Illinois has held that its dram shop act has no extra territorial application. *Graham v. General U.S. Grant Post No. 2665, V.F.W.,* 43 Ill.2d 1, 248 N.E.2d 657 (1969). However, this court is not bound by Illinois choice of law decisions. Furthermore, the reasoning of the *Graham* decision has been criticized as a misapplication of interest analysis. See R. Weintraub, *Commentary on the Conflict of Laws,* 237–239, note 48 (1971).

**6.** Restatement (Second) of Conflict of Laws § 145 reads:

The General Principle.

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issues.

Section 6 reads:

Choice of Law Principles:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular fields of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

**7.** The following factors in Restatement (Second) of Conflict of Laws, § 6(2) have minimal relevance to the choice of law in the case under review and will not be discussed:

The relevant policies of the forum state, Missouri, must be considered. The policies behind allowing a full measure of recovery are three fold. One policy is to provide for the economic well-being of the decedent's dependents so that they will not become wards of the state. A second policy is to provide funds with which to pay creditors of the decedent. A third policy furthered by allowing unrestricted judgments for wrongful death is to promote the admonitory effect such judgments would have on potentially negligent defendants.

The first two policies are relevant to the case at bar. Missouri has an interest in the compensation of appellants for their loss because appellants are domicilaries of Missouri. See Restatement (Second) § 145(2)(c). If appellants are unable to support themselves financially, it will be the coffers of the Missouri treasury which will be called upon to provide them sustenance.

Compensation of the decedent's creditors is also a relevant policy. Missouri was the domicile of appellants' decedent and the place where he was injured. See Restatement (Second) of Conflict of Laws § 145(2)(a), (c). Any creditors who have not been paid are likely to be located in Missouri.

The third policy, however, is of slight relevance in the present case. The conduct of respondent Roberts which contributed to the death of appellant's decedent occurred in Illinois and the tavern owner is apparently a domiciliary of Illinois. See Restatement (Second) of Conflict of Laws § 145(2)(b), (c). A policy of allowing unrestricted judgments in actions for deaths occasioned in Missouri will have minimal deterrent effect on persons and entities who reside and conduct their business affairs outside this state.

Inasmuch as Illinois is the only state other than Missouri which is involved in the present case, the relevant policies of Illinois must also be taken into consideration. The Illinois Dram Shop Act would allow recovery against tavern owners, thus indicating a concern with compensation of victims and deterrent effect on dram shop owners. But by limiting the measure of damages, Illinois would seem to have expressed an interest in protecting tavern owners from excessive judgments.

The first policy, compensation of victims, is irrelevant in Illinois because appellants are neither residents nor domiciliaries of Illinois. The second policy, deterring tavern owners from serving alcoholic beverages to an intoxicated patron is relevant in Illinois for the reason that the tavern involved in the case at bar is located in Illinois. However, this policy would be better served by the unrestricted judgments allowed under Missouri law. Thus, the policy of deterrence would seem to point to a choice of Missouri law.

The third policy, protection of tavern owners from possible excessive judgments, is relevant in Illinois to the case at bar because the tavern owner resides and conducts her business in Illinois. Protection of tavern owners is inconsistent with the Missouri policy of full recovery.

Each state thus has an interest in the case under review which would be advanced by a choice of Illinois or Missouri law. None of the other factors listed in Section 6 of the Restatement (Second) of Conflict of Laws are relevant with the exception of predictability of result.

Predictability of result would seem to point to a choice of Missouri law. On the one hand, one could say that a Missouri choice of law would be an unfair surprise to respondent Roberts because her connection with the present case occurred as a result of transactions in Illinois. However, it is unlikely that respondent would have been totally unaware that many of her patrons

(a) the needs of the interstate and international systems,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular fields of law,

(g) ease in the determination and application of the law to be applied.

came from Missouri because her tavern is located near the Illinois-Missouri border in Granite City, Illinois. Thus, the fact that an accident occurred in Missouri as a result of the intoxicated condition of one of her patrons blunts any claim of respondent that a choice of Missouri law was an unpredictable consequence.

If one examines the question of predictability from appellants' standpoint, any choice of law other than Missouri law would be a manifestly unfair surprise. Appellants reside in Missouri. The decedent lived and worked here. To tell appellants that a Missouri resident who is killed by a second Missouri resident while the former is working within Missouri that Illinois law governs a resulting lawsuit would doubtless be met with shock and disbelief.

The factor of predictability of result indicates that Missouri law should be applied. Furthermore, where it is difficult to establish that a particular state has the most significant relationship to an issue, "... then the trial court should continue, as in the past, to apply the substantive law of the place of the tort." *Kennedy v. Dixon, supra* at 185; see also *State ex rel. Broglin v. Nangle,* 510 S.W.2d 699, 704[3] (Mo. banc 1974). And: "... when an act operates across a state line, its legal character is determined by the law of the place where it first takes harmful effect or produces the result complained of. R. Leflar, American Conflicts of Law, § 133 at 267 (3rd ed. 1977)." *Kansas City Star Co. v. Gunn,* 627 S.W.2d 332, 334; *Hughes Provision Co. v. La Mear Poultry & Egg Co.,* 242 S.W.2d 285, 288[3–4] (Mo.App.1951).

Consideration of the relevant factors as set forth in the Restatement (Second) Conflict of Laws, § 6(2) dictates that Missouri law be chosen.

One cannot, however, apply Missouri law without addressing the question of whether such a choice of law violates respondent Roberts' constitutional rights under either the Full Faith and Credit Clause or the Due Process Clause of the Fourteenth Amendment of the federal constitution. U.S. Const. Art. 4 § 1; U.S. Const.Amend. 14.

... [F]or a state's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

*Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 640[3], 66 L.Ed.2d 521, reh. den. 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981).

In *Hague,* the respondent's husband was killed while riding on a motorcycle in Wisconsin. The decedent and the respondent were residents of Wisconsin. The decedent, however, commuted daily from Wisconsin to his place of employment in Minnesota. After the accident, but before initiation of the lawsuit, respondent moved to Minnesota. Respondent then brought suit in Minnesota against Allstate Insurance Co., which did business there, seeking a declaratory judgment that the "... $15,000 uninsured motorist coverage on each of her late husband's three automobiles could be 'stacked' to provide total coverage of $45,000." 101 S.Ct. at 636. The Minnesota Supreme Court applied Minnesota law to find that the policies could indeed be stacked. Id. at 636–637.

The U.S. Supreme Court upheld Minnesota's choice of law. Id. at 640[3]. Three factors influenced the court in its decision. First, the decedent was a member of the forum state's work force which gave it an interest in the "... safety and well-being of its work force and the concomitant effect on Minnesota employers." Id. at 641. In the instant case, appellants' decedent had an even more intimate connection with the forum state. Not only was the decedent a member of Missouri's work force, but he was also an employee of a political subdivision of Missouri. Furthermore, decedent was, and appellants are, residents of Missouri.

The second contact *Hague* had with Minnesota was that at all times Allstate Ins. Co. was doing business in Minnesota; therefore, Allstate could "... hardly claim unfamiliarity with the laws of the host jurisdic-

tion and surprise that the state courts might apply forum law ..." Id. at 642–643.

Turning to the case under review, there are no facts in appellants' petition from which one could infer that respondent was "doing business" in Missouri. However, Granite City lies within ten miles by highway from the Missouri border. It is less than five miles from a major interstate highway, I–270, which connects Illinois and Missouri. In view of these facts, plus the foreseeability that a patron would drive a car to a tavern, it is unlikely that respondent was unaware of the possibility that a drunken patron would leave the tavern by automobile and drive into Missouri.

█ The court in *Hague* also noted that the person seeking recovery was a Minnesota resident at the time of litigation, which gave Minnesota an interest in her compensation. Id. at 643–644. Likewise, Missouri has an interest seeing to it that appellants in the case at bar are fully compensated for their loss. Therefore, a choice of Missouri law by this court would not violate rights granted by the United States Constitution.

The decision reached by this court on the constitutionality of the choice of forum law is also supported by decisions of lower federal courts. In *Rosenthal v. Warren,* 475 F.2d 438 (2d Cir.1973), a New York domiciliary was treated in Massachusetts by a Massachusetts physician. The New York domiciliary died in a Massachusetts hospital as the result of the physician's medical malpractice. The court held that a federal district court sitting in New York was not required to apply a Massachusetts law which limited the amount of damages recoverable in a wrongful death action. Id. at 446–447[5]. Although this court is not bound by the pronouncements of the federal circuit courts of appeals, this court finds *Rosenthal v. Warren* persuasive. See also *Scott v. City of Hammond, Ind.,* 519 F.Supp. 292, 297–298 (N.D.Ill.1981) (Illinois law applied to an Indiana municipality).

The judgment on Count III of the petition is affirmed; the judgment on Count V of the appellants' petition is reversed and the cause remanded for further proceedings.

PUDLOWSKI, P.J., and KELLY, J., concur.