AUTO OWNERS (MUTUAL)
INSURANCE COMPANY,
Respondent,

v.

SUGAR CREEK MEMORIAL POST NO. 3976, Veterans of Foreign Wars of the United States, Inc., Olivia Rogers, a minor, Monica Sweet and Douglas Sweet, Appellants.

No. WD 62120.

Missouri Court of Appeals,
Western District.

Sept. 30, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2003.

Application for Transfer Denied
Jan. 27, 2004.

Gary R. Bradley, Lexington, for appellant Rogers.

John W. Kurtz, Kansas City, for appellants Sweet.

Thomas C. Locke, Nancy Jackson, Independence, for Appellant Sugar Creek Memorial Post No. 3976, Veterans of Foreign Wars of the United States, Inc.

Charles H. Stitt, Gregory P. Forney, Kansas City, for respondent.

Before: ULRICH, P.J., SPINDEN and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Sugar Creek Memorial Post No. 3976, Veterans of Foreign Wars of the United States, Inc. (the "VFW"), Olivia Rogers, and Monica and Douglas Sweet (collectively, "Appellants") appeal from the Circuit Court of Jackson County's grant of Auto Owners' Mutual Insurance Company's ("Auto Owners' ") Motion for Summary Judgment and Petition for Declaratory Relief. Appellants raise two points on appeal. In their first point, they argue the trial court erred in finding no liability coverage under the VFW's policy with Auto Owners, because the liquor liability exclusion and exception were ambiguous, in that Auto Owners' own managers and policy

guidance documents, as well as persuasive opinions nationwide, acknowledge the ambiguity of the undefined policy terms. Appellants allege in their second point that the trial court erred in finding no liability coverage because their other viable allegations of negligence qualified for coverage in that neither the liability policy nor case law precluded recovery on these alternative grounds. We affirm the trial court's judgment.

## Background

Olivia Rogers and Monica and Douglas Sweet filed petitions against the VFW alleging that, on June 6, 2001, an automobile driven by Dana Rogers was struck by a vehicle driven by Harry Bruce ("Bruce"), killing both occupants of the Rogers vehicle (Rogers and Elton Sweet). The petitions claimed that, prior to the collision, Bruce had been drinking alcohol served to him at a bar operated by the VFW. Rogers and the Sweets argued the VFW was negligent in serving alcohol to Bruce, when he was already obviously intoxicated, and that this negligence caused the deaths of Dana Rogers and Elton Sweet. Additionally, they alleged the VFW was negligent in failing to take certain steps to prevent the automobile accident, such as failing to take Bruce home or prevent him from driving.

Since 1975, the VFW has operated a bar open to the public. The bar held a liquor license and charged patrons for alcoholic beverages. The VFW employed a bartender and a club room manager. There was some evidence, disputed by Appellants, that the bar generated approximately $5,000 per month in gross revenues. At the time of the accident, the VFW carried a Commercial General Liability Policy with Auto Owners', but no separate liquor liability policy. The provision of the policy at issue, provided:

2. Exclusions

This insurance does not apply to:

\* \* \*

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business [1] of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Auto Owners' filed a petition for declaratory judgment seeking a declaration that each theory of liability asserted against the VFW was either (a) excluded from coverage by the exclusion above or (b) beyond the scope of cognizable tort liability under Missouri law. On October 28, 2002, the circuit court granted declaratory relief to Auto Owners' and granted its Motion for Summary Judgment. This appeal follows.

## Standard of Review

*ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993) controls the standard of review for an appeal from a grant of summary judgment. *Quaker Oats Co. v. Stanton*, 96 S.W.3d 133, 136–37 (Mo.App. W.D.2003). Appellate review of a grant of summary judgment is essentially de novo. *Id.* at 137. Our criteria for ascertaining the propriety of summary judgment are the same as those used initially by the trial court. *Id.* We will not defer to the trial court's order granting

1. The phrase "in the business of" is not defined in the policy.

summary judgment because the judgment of the trial court is based on the record submitted and amounts to a decision on a question of law. *Id.* This court reviews the record in the light most favorable to the party against whom judgment was entered and gives the benefit of all reasonable inferences from the record to that party. *Wilkes v. St. Paul Fire & Marine Ins. Co.,* 92 S.W.3d 116, 120 (Mo.App. E.D.2002). We take as true all evidence presented in support of the motion, unless contradicted by the non-moving party's response to the motion. *Id.* "The moving party bears the burden of proving that it is entitled to judgment as a matter of law and that no genuine issues of material fact exist." *Id.*

## I.

In their first point on appeal, Appellants argue the circuit court erred in finding no liability coverage under the VFW's policy, because the exclusion and exception at issue were ambiguous, in that Auto Owners' managers and policy guidance documents, as well as persuasive opinions nationwide, acknowledge the ambiguity of the provision. The policy issued to the VFW by Auto Owners' excluded coverage for "bodily injury" or "property damage" for which the VFW might be held liable by reason of: (1) causing or contributing to the intoxication of any person; or (2) furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol. The exclusion applied only if the policy holder was "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." We must determine if, at the time of the accident, the VFW was in the business of selling, serving, or furnishing alcoholic beverages so as to defeat coverage.

■ This court will give the language in an insurance contract its plain meaning. *Melton v. Country Mut. Ins. Co.,* 75 S.W.3d 321, 324 (Mo.App. E.D.2002). "An insurance policy will be held ambiguous if there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Id.* Whether or not the language of an insurance contract is ambiguous is a question of law. *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.,* 852 S.W.2d 396, 399 (Mo.App. W.D.1993). If we find no ambiguity, we will enforce the insurance policy according to its terms. *Melton,* 75 S.W.3d at 324. "A court may not use its inventive powers to create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage." *Id.* at 325.

Neither the parties nor this court found a Missouri case analyzing whether a provision in a commercial general liability policy excluding coverage for liquor liability to organizations "in the business of" serving or furnishing alcoholic beverages is ambiguous when applied to a non-profit organization such as the VFW. Both parties cite opinions from other jurisdictions that have addressed the issue. Appellants cite a line of cases holding the phrase "in the business of" in a liquor liability exclusion clause of an insurance policy is ambiguous when the insured is a non-profit organization. *See, e.g., Newell–Blais Post # 443, Veterans of Foreign Wars of the United States, Inc. v. Shelby Mut. Ins. Co.,* 396 Mass. 633, 487 N.E.2d 1371 (1986); *American Legion Post # 49 v. Jefferson Ins. Co. of New York,* 125 N.H. 758, 485 A.2d 293 (1984); *Laconia Rod & Gun Club v. Hartford Accident & Indem. Co.,* 123 N.H. 179, 459 A.2d 249 (1983).

In *Laconia,* a patron of a non-profit club sued it for personal injuries she sustained allegedly due to the club serving her alcohol until she was exceedingly intoxicated and allowing her to leave without knowing

if she were properly escorted. 459 A.2d at 250, 123 N.H. 179. The club's insurer refused to defend the suit based on a policy exclusion that read, "This insurance does not apply: (h) to bodily injury ... for which the insured ... may be held liable (1) as a person or organization engaged in the business of manufacturing ... selling or serving alcoholic beverages...." *Id.* After noting that the word "business" can be used in a broad sense to mean any regular activity occupying one's time, with or without a profit motive, or more narrowly to mean an activity with a direct profit motive, the New Hampshire Supreme Court found the phrase "in the business of" as used in the policy was ambiguous. *Id.* at 251, 123 N.H. 179. Without any further reasoning, the court held the club was not in the business of selling or serving alcoholic beverages. *Id.*

In *American Legion*, the New Hampshire Supreme Court elaborated on the *Laconia* opinion. *American Legion* involved the operation of a bar by a non-profit veterans' association. 485 A.2d at 294, 125 N.H. 758. The Legion had an insurance policy with a liquor liability exclusion like the one in *Laconia*. *Id.* Under the holding of *Laconia*, the court found the term "in the business of" was ambiguous and resolved the ambiguity in favor of the insured. It held the Legion, a non-profit organization, did not have a direct profit motive in operating its bar and, therefore, was not "in the business of" selling alcoholic beverages. *Id.* The fact that the Legion derived substantial revenues from the operation of its bar did not alter the court's conclusion. It stated, "It is the character of the organization, not the profitability of its liquor sales ..., which determines whether or not an exclusionary clause, such as the one in question here, applies." *Id.* at 294–95, 125 N.H. 758.

We find the reasoning in the cases cited by Auto Owners', especially *Sprangers v. Greatway Insurance Co.*, 182 Wis.2d 521, 514 N.W.2d 1 (1994), more persuasive and sound than that in Appellants' cases. As in the present case, *Sprangers* involved the operation of a bar by a VFW open to the public, albeit only on Thursdays, Fridays, and Saturdays. 182 Wis.2d 521, 514 N.W.2d at 3. After drinking one night at the VFW, an under-aged patron struck two motorcyclists, killing one and severely injuring the other. *Id.* The VFW's insurer denied coverage based on a policy exclusion that read:

This insurance does not apply to:

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

*Id.* at 4.

The court framed the issue in the following manner, "We must determine whether the VFW, a non-profit fraternal society, is 'in the business of ... selling [and] serving ... alcoholic beverages' within the meaning of the policy exclusion." *Id.* It addressed the opinions cited by Appellants discussed above, but ultimately declined to follow their reasoning. *Id.* at 5. The court noted that several other courts, reviewing substantially similar policy language in cases involving non-profit organizations, had characterized the phrase "in the busi-

ness of" as unambiguously referring to organizations with non-profit purposes. *Id.* "These courts have concluded that the policy exclusion describes the *activities* of an organization rather than its corporate purpose or character." *Id.*

The court continued by summarizing some of those opinions, and we borrow from the summaries here. The South Dakota Supreme Court in *McGriff v. United States Fire Insurance Co.*, 436 N.W.2d 859 (S.D.1989), specifically rejected the reasoning of the New Hampshire court in *Laconia* and *American Legion.* Even though BLACK'S LAW DICTIONARY and WEBSTER'S DICTIONARY had various definitions of "business," the *McGriff* court found that "business" generally refers to "a commercial enterprise or activity," and furthermore, that the language of the phrase "in the business of" in the policy exclusion "could not be more clear." 436 N.W.2d at 862. The court concluded that regardless of how the bar's profits were eventually used, the bar was in the business of selling alcohol, and "[a]nyone reading the policy, using the normal vernacular, would understand what it meant." *Id.* at 863.

In *Fraternal Order of Eagles, Cle Elum Aerie No. 649 v. General Accident Insurance Co. of America,* 58 Wash.App. 243, 792 P.2d 178 (1990), the Washington Court of Appeals adopted the approach of focusing on the activities, rather than the corporate structure, of the insured. It held that the phrase "in the business of," as used in the liquor liability exclusion in a policy issued to a fraternal organization, applied to "permanent, ongoing liquor sales operations, rather than occasional events at which the insured may sell or serve liquor." *F.O.E.*, 792 P.2d at 182–83. The court concluded that "given a fair, reasonable and sensible construction, [the policy] unambiguously exclude[d]" coverage. *Id.* at 183.

In *Grain Dealers Mutual Insurance Co. v. Lower,* 979 F.2d 1411, 1415–16 (10th Cir.1992), the Tenth Circuit, applying Oklahoma law, adopted the reasoning of *McGriff* and *F.O.E.* and held that an American Legion post that operated a bar open to the public was "in the business" of serving liquor for the purposes of a liquor liability exclusion nearly identical to the one at issue in *Sprangers* and the present case. The Louisiana Court of Appeals ruled in *Cormier v. Travelers Insurance Co.*, 618 So.2d 1185 (La.Ct.App.1993), that an American Legion post was "in the business of selling or serving alcoholic beverages," as that phrase was used in a liquor liability exclusion. The court concluded the phrase obviously described the "nature of the activity engaged in" and had "nothing to do with the specific purpose for which the activity is pursued or the nature of the person or entity engaged in the activity." *Cormier*, 618 So.2d at 1187.

The *Sprangers* court stated that its "objective [was] to ascertain and carry out the intention of the parties." 514 N.W.2d at 6. Primarily, the court wanted to ensure the language of the policy was interpreted to mean what a reasonable person in the position of the VFW would have understood the words to mean. *Id.* The court stated, "The mere fact that a word has more than one dictionary meaning, or that the parties disagree about the meaning, does not necessarily make the word ambiguous if the court concludes that only one meaning applies in the context and comports with the parties' objectively reasonable expectations." *Id.* at 7. The court found it inappropriate to create ambiguity simply because there were two dictionary definitions of the word "business." *Id.* Rather, the court examined the context in which the word "business" was used in the policy to determine what a reasonable per-

son in the position of the VFW would have understood. *Id.*

The court rejected the VFW's argument that because it was a non-profit organization, none of its activities could properly be called a "business." After examining the terms of the insurance policy, the nature of the VFW's organization, and the nature of its activities, the court concluded that a reasonable person in the position of the VFW would have understood that the VFW was "in the business of" selling and serving alcohol and, therefore, was excluded from coverage for liability for selling to an underaged patron. *Id.* The court determined that the non-profit nature of the VFW was irrelevant for purposes of the policy, because the policy liability provisions were directed toward the nature of the risk, not the corporate status of the insured. *Id.* at 8. "[W]hen an insurer writes an exclusion in a liability policy it generally directs the exclusion at a risk, not a person's status." *Id.* Insurance policies protect against risk. Risk results "from the nature of the insured's activities, not the nature of its organizational status." *Id.* To establish the meaning of "business," the relevant inquiry under an insurance policy is the nature of the insured's activities, not its organizational status. *Id.* Therefore, a court must determine whether the insured "consistently engages in an activity which creates a level of risk which the insurer has declared unacceptable." *Id.*

The court held that a reasonable insured in the position of the VFW examining its activities would have understood the bar was engaged in the business of selling or serving alcohol. *Id.* at 9. It noted that the VFW generated thousands of dollars annually by selling alcohol and even realized a profit in some years. *Id.* For all practical purposes, the court found the operations of the VFW's bar were identical to those of

for-profit bars. *Id.* At the time of the accident, the bar was open thirty or more hours a week. It employed eight people, including six bartenders and a bar manager. The bar held a state seller's permit authorizing it to engage in the business of selling tangible personal property and taxable services and also held a liquor license. *Id.* Thus, the VFW's bar, like other bars, was a "regular and organized activity involving products or services consumed by the public." *Id.* The VFW's bar exposed its insurer to the same risk inherent in other bars and taverns. *Id.* The court agreed with the court of appeals' assessment that, for the purpose of the insurance policy, "the VFW's activities and the concomitant risk of partaking in those activities are synonymous with, if not identical to those of other bars and taverns." *Id.*

■ We agree with and adopt the reasoning of the *Sprangers* court. When determining whether a liquor-related liability is excluded from coverage, the focus of the analysis should be on the activities of the insured and the risks inherent in those activities, rather than on the corporate status of the insured. The VFW's bar exposed its insurer to the same risks inherent in other drinking establishments operated by for-profit entities. The VFW was licensed to sell alcohol. Since 1975, it has operated a bar open to the public. It charges the public for alcoholic beverages. The VFW employs a bartender and a club room manager. The parties disagree about the amount of monthly revenues generated by the bar and whether the bar was operated at a profit, but neither fact is determinative.

■ We find that in the context of the policy at issue, given the activities of the VFW, a reasonable person in the position of the VFW would have understood that the VFW was "in the business of … selling … [and] serving alcoholic beverag-

es." Therefore, the VFW was excluded from liability coverage for selling alcohol to Bruce. The VFW's operation of its bar was a regular and organized activity involving the sale of products to the public. *Sprangers*, 514 N.W.2d at 9. We do not believe that the term "in the business of" is ambiguous as used in the policy issued to the VFW simply because the dictionary holds more than one meaning for the term "business." Nor are we persuaded that the term is ambiguous by Appellants' argument that Missouri case law has established the concepts of "continuity" and "profit motive" as guidelines for determining what is a "business." Those cases are not on point.

Appellants devote a portion of their argument under Point I to extrinsic evidence, such as the opinions of Auto Owners' employees regarding the meaning of the phrase "in the business of" and the Silver Plume Fidelity, Casualty & Surety Manual written by the Insurance Services Office. We have determined the phrase "in the business of selling ... [and] serving ... alcoholic beverages" as used in the policy unambiguously applies to the VFW's operation of its bar, therefore, we need not address this evidence. Appellants also attempt to distinguish the *Sprangers* opinion on its facts. They argue the *Sprangers* court had much more expansive evidence on the profitability and operation of the bar before it than in the present case. This argument is not convincing, as we do not believe the profitability of the bar in *Sprangers* was a determining factor in the court's decision.

Point I is denied.

## II.

Appellants argue in their second point on appeal that the circuit court erred in finding no liability coverage, because their other viable allegations of negligence qualified for coverage, in that neither the liability policy nor case law precluded recovery on these alternative grounds. Under Point II, Appellants quote from Auto Owners' argument in its Motion for Summary Judgment:

The Petitions purport to assert claims against the VFW Post based on other conduct, which the Petitions also characterize as negligent, such as failing to take Mr. Bruce home, failing to prevent Mr. Bruce from leaving and failing to prevent Mr. Bruce from driving his vehicle home. However, none of these allegations set forth a viable theory of negligence liability, under Missouri law.

Appellants assert Auto Owners' based this argument on Missouri case law rather than upon the insurance policy and that the circuit court made no specific ruling on this point. In its judgment, the circuit court granted declaratory relief to Auto Owners' finding that each of the allegations of negligence against the VFW was within the scope of the Exclusion and was, therefore, outside the scope of coverage under the liability-insuring provision of the policy. The circuit court made a sufficient ruling on the above argument by stating, "each of the allegations of negligence against" the VFW was excluded from coverage under the policy. We must affirm a trial court's ruling on a summary judgment motion if it can be sustained under any theory, even if the trial court reached the correct result for the wrong reasons. *Kilventon v. United Mo. Bank*, 865 S.W.2d 741, 743 (Mo.App. W.D.1993).

Under the original common law of Missouri, a tavern owner could not be held liable for injuries to third parties caused by an intoxicated person. *Elliot v. Kesler*, 799 S.W.2d 97, 100 (Mo.App. W.D.1990). In 1934, the Missouri legislature repealed a Dram Shop Act that had provided a civil remedy against bar and tavern owners for

injuries caused by their intoxicated patrons. *Id.* "The repeal of the dramshop act restored questions of dramshop liability to the arena of common law." *Id.* From 1934 to 1980, no common law cause of action existed in Missouri against one who had furnished alcohol to a person who became voluntarily intoxicated and injured a third party. *Id.*

This court, in 1980, handed down its opinion in *Sampson v. W.F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo.App. W.D.1980), recognizing, for the first time, a common law cause of dramshop liability for serving alcohol to a minor who later hurt himself. The *Sampson* holding was extended to claims by injured third parties in *Nesbitt v. Westport Square, Ltd.,* 624 S.W.2d 519 (Mo.App. W.D.1981). In *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App. E.D.1983), the Missouri Court of Appeals, Eastern District, relied on *Sampson* and *Nesbitt* in finding a duty in tavern owners to refrain from serving intoxicated patrons and imposing liability for injuries resulting from a breach of that duty.

In 1985, the Missouri legislature responded to the pronouncement of Missouri public policy by the judiciary in *Carver, Sampson,* and *Nesbitt,* by passing section 537.053, RSMo 1986, which expressly abrogated the holdings of those cases. At the time, section 537.053 provided:

1. Since the repeal of the Missouri Dram Shop Act in 1934 . . ., it has been and continues to be the policy of this state to follow the common law of England as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. This legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Carver v.

Schafer, 647 S.W.2d 570 (Mo.App.1983); Sampson v. W.F. Enterprises, Inc., 611 S.W.2d 333 (Mo.App.1980); and Nesbitt v. Westport Square, Ltd., 624 S.W.2d 519 (Mo.App.1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

The Missouri Dram Shop Act is a legislative prohibition against dramshop liability coupled with the creation of a limited cause of action. *Von Ruecker v. Holiday Inns, Inc.,* 775 S.W.2d 295, 298 (Mo.App. E.D.1989). "It is a well established principle that when a statute creates a new right . . . that did not exist at common law . . ., and also provides a specific remedy for the enforcement thereof, that statutory remedy is exclusive." *Id.* at 299.

In *Elliot,* an intoxicated patron of a bowling alley struck and killed a woman in a head-on collision. 799 S.W.2d at 99. Plaintiffs argued an employee of the bowling alley served the patron, Kesler, alcoholic beverages even though he was clearly extremely intoxicated. *Id.* Furthermore,

Plaintiffs alleged the employee aided Kesler in getting into his locked car by providing him with a coat hanger. *Id.* Plaintiffs filed a wrongful death action against the bowling alley and Kesler, asserting two theories of liability against the bowling alley. *Id.* First, Plaintiffs alleged the bowling alley negligently sold and supplied alcoholic beverages to Kesler with knowledge he was intoxicated. *Id.* Second, Plaintiffs alleged negligence in assisting Kesler to gain access to his car and car keys by supplying him with a coat hanger knowing that he was unfit to drive. *Id.*

In *Elliot,* this court stated, "The parties have not cited, nor do we find, a case where Missouri has recognized a cause of action for negligent assistance of a drunk driver." *Id.* at 100. We analyzed whether the bowling alley owed a duty to decedent to not assist Kesler in gaining access to his car and car keys when it knew or should have known that Kesler was too intoxicated to drive, and whether the breach of such duty caused the injury inflicted. *Id.* After reciting the history of dram shop liability in Missouri, this court stated:

> If, as a general rule, one who supplies alcohol to an intoxicated person does not have a legally enforceable duty to third persons and is specifically held by legislative enactment, pursuant to § 537.053, not to have proximately caused the third parties injuries, then one who is arguably even less culpable for the injuries inflicted by an intoxicated driver similarly has no legal duty and cannot be held to have proximately caused injuries to a third party.

*Id.* at 101. We concluded that to recognize a cause of action for negligent assistance of a drunk driver would result in there being no liability for one who, for profit, aids a drunk person in becoming drunk, while imposing liability on a person who merely assists another in a situation as "potentially innocent and seemingly considerate as helping a person find their car keys...." *Id.* This court held such a ruling would be inconsistent with Missouri public policy that it is the consumption of alcohol that is the proximate cause of injuries inflicted by a drunk person and that no cause of action for negligent assistance of an intoxicated driver existed. *Id.*

Under *Elliot,* Appellants' alternate claims of negligence must fail. There is no cause of action for negligent assistance of an intoxicated person in Missouri. The Dram Shop Act provides the exclusive, limited cause of action available to third parties whose injuries were proximately caused by a tavern's service of alcoholic beverages to an obviously intoxicated patron. Therefore, the trial court reached the right result in finding no liability on the part of Auto Owners' on the alternative claims of negligence, even if it did not state the proper reason for this result.

Appellants argue that after *Kilmer v. Mun,* 17 S.W.3d 545 (Mo. banc 2000), *Elliot* is no longer good law. In *Kilmer,* the Missouri Supreme Court held that the requirement in section 537.053.3 of a criminal prosecution and conviction as a procedural prerequisite to bringing a cause of action against a licensed seller of liquor was unconstitutional under the open courts doctrine. 17 S.W.3d at 552–53. However, the *Kilmer* decision invalidated only the portion of the Dram Shop Act requiring a criminal prosecution and conviction as a prerequisite to bringing a cause of action. *Piskorski v. Larice,* 70 S.W.3d 573, 576 (Mo.App. E.D.2002). The remainder of the statute is still valid. *Id.* *Kilmer* did not change the duty owed by a tavern to a person who suffers injury or death at the hands of an intoxicated patron. *Id.* In *Elliot,* we did not rely on the invalidated procedural requirement in reaching its decision regarding the claim

of negligent assistance of an intoxicated driver. Consequently, its reasoning still stands, and Appellants' second point must fail.

Point II is denied.

## Conclusion

We hold the term "in the business of" as used in the liquor liability exclusion in the VFW's policy unambiguously applied to the VFW's operation of a bar open to the public, thereby defeating coverage. The negligence claims asserted against the VFW, outside of the Dram Shop Act, were not viable causes of action under Missouri law. Therefore, the trial court did not err in finding no liability on the part of Auto Owners' and granting it summary judgment.

ULRICH, P.J., and SPINDEN, J., concur.