IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 MELISSA A. RASMUSSEN, )
 )
 Respondent, )
 WD83806
 v. )
 )
 OPINION FILED:
 )
 June 15, 2021
 ILLINOIS CASUALTY COMPANY, )
 )
 Appellant. )

 Appeal from the Circuit Court of Clay County, Missouri
 The Honorable Janet Sutton, Judge

 Before Division Two: Mark D. Pfeiffer, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 Illinois Casualty Company (“ICC”) appeals from the judgment of the Circuit Court of Clay

County, Missouri (“trial court”), in favor of Melissa A. Rasmussen (“Rasmussen”) in her claims

against SRJS, Inc., d/b/a BoJo’s Bar & Grill (“SRJS”) and Tyler Rivera (“Rivera”) (jointly,

“Defendants”) for violating Missouri’s Dram Shop Act, § 537.053.1 ICC, SRJS’s liability insurer,

intervened in the proceeding below pursuant to section 537.065.2. ICC raises two points on appeal,

asserting that (1) the trial court erred in restricting ICC’s discovery and (2) the trial court erred in

awarding punitive damages. We affirm.

 1
 All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.
 Factual and Procedural Background2

 On October 26, 2013, Ms. Rebecca S. Milner (“Milner”) was a customer at SRJS, d/b/a

BoJo’s Bar & Grill. Between the hours of 6:00 p.m. and 11:50 p.m., Milner consumed large

quantities of intoxicating liquors served by SRJS’s employee, Rivera. When Milner left the bar,

she drove westbound on Ne. 64th Street in her 2006 Honda Accord. At the same time, Rasmussen

was driving a 2007 Chrysler PT Cruiser eastbound on Ne. 64th Street. Milner crossed the double

centerline from the westbound lanes and entered Rasmussen’s eastbound lane of travel going in

the wrong direction. Milner’s vehicle struck the front of Rasmussen’s vehicle in a head-on

collision. Rasmussen sustained severe, permanent, and progressive injuries which required past

medical treatment in excess of $36,000 and will require extensive continuing medical treatment in

the future up to and likely in excess of $900,000.

 On February 29, 2016, Rasmussen filed an action against SRJS under the Missouri Dram

Shop Act, § 537.053, for personal injuries, requesting compensatory and punitive damages. SRJS

was insured under a commercial general liability insurance policy issued by ICC and sought

coverage for Rasmussen’s lawsuit. On August 25, 2017, ICC denied SRJS’s request for coverage

on the grounds that it was barred by the insurance policy’s Liquor Liability Exclusion.

 On January 22, 2018, Rasmussen filed a first amended petition, which added Rivera as a

defendant. Count I alleged that SRJS failed to properly train, supervise, or monitor its employees

to recognize intoxication, to cease the service of alcohol and/or follow other industry-standard

protocol regarding the safety of bar and restaurant patrons. Count II alleged a negligence claim

against Rivera for serving intoxicating liquors to a visibly intoxicated person. SRJS again

requested coverage under the ICC policy for Rasmussen’s first amended petition, which request

 2
 In our review of a bench-tried case, we view the facts in the light most favorable to the judgment. Sauvain
v. Acceptance Indem. Ins. Co., 437 S.W.3d 296, 299 n.2 (Mo. App. W.D. 2014).

 2
ICC denied on March 2, 2018, on the grounds that the allegations in the first amended petition fell

outside the policy’s coverage based on the application of the policy’s Liquor Liability Exclusion.

 Thereafter, Rasmussen and Defendants entered into a section 537.065 Settlement

Agreement on June 5, 2018, in which the Defendants agreed that they would not contest liability

and damages in the litigation and, in return, Rasmussen would only seek to collect the judgment

from the ICC insurance policy insuring SRJS. On July 19, 2018, SRJS, by email from counsel,

gave notice to ICC, as required by section 537.065.2, that the parties had entered into a Settlement

Agreement pursuant to section 537.065.

 On August 17, 2018, ICC filed a motion to intervene in the pending lawsuit, as a matter of

right, pursuant to section 537.065.2. Contemporaneously, ICC filed a motion to dismiss

Rasmussen’s first amended petition on the grounds that general negligence claims may not be

brought against the Defendants as a matter of law for dram-shop-related claims since the exclusive

remedy under Missouri law for dram-shop-related claims is the limited cause of action authorized

by section 537.053. In response, on September 10, 2018, Rasmussen filed a motion for leave to

file a second amended petition, which specifically alleged a cause of action under section 537.053

against SRJS and Rivera and requested compensatory and punitive damages against each. On

September 19, 2018, after a hearing, the trial court granted ICC’s motion to intervene and

Rasmussen’s motion to file a second amended petition. Thereafter, ICC moved to dismiss

Rasmussen’s second amended petition. The trial court denied ICC’s motion to dismiss as to

Count I against SRJS and Count II against Rivera to the extent liability under the Dram Shop Act

provisions were alleged and granted the motion as to Count III against both defendants as those

allegations, which sounded in general negligence, were otherwise duplicative. ICC, as an

intervenor, did not file any further responsive pleading to Rasmussen’s second amended petition

and did not otherwise seek to contest liability or the issue of causation for Rasmussen’s damages

 3
via responsive pleadings. Defendants filed their answer to Rasmussen’s second amended petition

on February 14, 2020, in which neither liability nor causation for Rasmussen’s damages were

contested.

 On June 18, 2019, ICC filed a notice to take the deposition of Rasmussen. In response,

Rasmussen filed a motion to quash ICC’s deposition notice and to bar any additional discovery by

ICC. Rasmussen alleged that section 537.065.2 did not permit ICC to control and manage the

defense of its insured, SRJS; ICC was not an adverse party; and even if it was, its rights were

restricted to its contractual obligations to defend SRJS, and it waived all of its rights by failing to

adhere to their contract. ICC countered that, as a “party” to the lawsuit, it had the right under

Rules 56.01(a) and 57.03(a) to conduct discovery to protect its interests, especially when its

interest and that of its insured were not aligned. After a hearing held on August 22, 2019, the trial

court granted Rasmussen’s motion to quash.

 While ICC was not permitted to take a discovery deposition of Rasmussen, Rasmussen did

not object to ICC’s written discovery to her. Hence, ICC submitted interrogatories and a request

for production of documents to Rasmussen, which were answered without objection by

Rasmussen. Additionally, Rasmussen did not object to ICC’s counsel participating in the

depositions of her life care plan and medical experts. ICC’s counsel thus conducted lengthy

cross-examinations of nurse life care planner Cori Ingram and neurologist Dr. Steven Arkin during

their respective depositions.

 A bench trial was held on February 19, 2020. Ms. Ingram’s and Dr. Arkin’s depositions

were admitted into evidence. Rasmussen, her mother, and her son testified. Rasmussen offered

evidence that she had incurred $36,320 in medical bills for treatment she received as a direct and

proximate result of the injuries sustained in the October 23, 2016 motor vehicle collision and that

she will need future medical care of at least in excess of $400,000 and likely in excess of $900,000.

 4
ICC neither examined any of the witnesses nor offered any evidence. In closing, Rasmussen’s

counsel argued that liability was established via the answer filed by the Defendants and the

evidence presented at trial. Counsel asked for damages in the total amount of $7 million:

$5 million for actual, and $2 million for punitive. ICC’s counsel objected to the trial court

considering or awarding punitive and/or aggravating circumstances damages as such damages

were not authorized by the Dram Shop Act. Rasmussen’s counsel countered that because dram

shop causes of action existed in the common law and were not expressly prohibited by Missouri’s

Dram Shop Act, punitive damages were available in the case.

 On February 25, 2020, the trial court entered its judgment, awarding Rasmussen

compensatory damages in the amount of $5 million against SRJS and $1 million against Rivera.

The trial court also found that SRJS’s actions “constituted a conscious disregard for the health,

safety and welfare of Plaintiff Rasmussen and others” and awarded Rasmussen punitive damages

in the amount of $2 million against SRJS to “punish . . . and deter it and other[s] from such conduct

now and in the future.”

 ICC filed a motion to amend the judgment seeking to have the award of punitive and/or

aggravating circumstances damages removed from the judgment and the trial court denied ICC’s

motion.

 ICC timely appealed.

 Point I

 In ICC’s first point on appeal, it asserts that the trial court abused its discretion when it

granted Rasmussen’s motion to quash its notice to take her deposition and bar any additional

discovery. Though we conclude that ICC has a valid complaint that the trial court’s discovery

ruling was erroneous, ICC’s point on appeal ignores the requirement to demonstrate that any such

 5
error by the trial court prejudiced ICC by materially affecting the merits of the case. Accordingly,

ICC’s point on appeal must fail.

 Standard of Review

 “‘Trial courts have broad discretion in administering rules of discovery, which this Court

will not disturb absent an abuse of discretion.’” Tate v. Dierks, 608 S.W.3d 799, 803 (Mo. App.

W.D. 2020) (quoting State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner, 239 S.W.3d

608, 610 (Mo. banc 2007)). “When reviewing the trial court’s decision regarding issues arising

from pre-trial discovery, of which appellate courts grant trial court decisions great deference, ‘[w]e

look only for an abuse of this broad discretion which results in prejudice or unfair surprise.’”

Scheck Indus. Corp. v. Tarlton Corp., 435 S.W.3d 705, 717 (Mo. App. E.D. 2014) (quoting Day

Advert. Inc. v. Devries & Assocs., 217 S.W.3d 362, 366 (Mo. App. W.D. 2007)).

 “No appellate court shall reverse any judgment unless it finds that error was committed by

the trial court against the appellant materially affecting the merits of the action.” Rule 84.13(b).

“[A]ppellate review is for prejudice, not mere error.” Empire Dist. Elec. Co. v. Coverdell, 588

S.W.3d 225, 244 (Mo. App. S.D. 2019) (internal quotation marks omitted). “Prejudicial error is

an error that materially affects the merits and outcome of the case.” Bar Plan Mut. Ins. Co. v.

Chesterfield Mgmt. Assocs., 407 S.W.3d 621, 635 (Mo. App. E.D. 2013) (citing D.R. Sherry

Constr., Ltd. v. Am. Family Mut. Ins. Co., 316 S.W.3d 899, 904 (Mo. banc 2010)). “In order to

demonstrate reversible error, . . . an appellant must demonstrate that the challenged trial court

ruling or action was legally erroneous and that appellant was actually prejudiced as a result of that

erroneous ruling or action.” Interest of J.G.H. v. Greene Cnty. Juv. Office, 576 S.W.3d 257, 260

(Mo. App. S.D. 2019). “The burden is on the appellant to prove the trial court abused its discretion

and prejudice resulted.” Ingham v. Johnson & Johnson, 608 S.W.3d 663, 699 (Mo. App. E.D.

2020) (citing In re Care & Treatment of Bradley v. State, 554 S.W.3d 440, 452 (Mo. App. W.D.

 6
2018)). This rule applies when addressing alleged trial court error in quashing a deposition. See

Bar Plan Mut. Ins. Co., 407 S.W.3d at 634-35 (“Assuming arguendo that the trial court did err and

abuse its discretion in quashing the deposition and subpoena, this is not reversible error unless

[appellant] was prejudiced thereby.”).

 Analysis

 The General Assembly amended section 537.065 effective August 28, 2017.3 The

amended statute gives insurers “two specific, limited rights: (1) the right to decide whether to

defend the insured in the underlying litigation, prior to the insured’s entry into a § 537.065

agreement; and (2) the right to intervene in ‘any pending lawsuit’ within thirty days of receiving

notice of a § 537.065 agreement.” Knight by & Through Knight v. Knight, 609 S.W.3d 813, 822

(Mo. App. W.D. 2020). After being allowed to intervene, the insurer becomes “a ‘party’ to the

 3
 Pertinent to this appeal, the amended statute provides:

 1. Any person having an unliquidated claim for damages against a tort-feasor, on account of personal
 injuries, bodily injuries, or death, provided that, such tort-feasor’s insurer or indemnitor has the
 opportunity to defend the tort-feasor without reservation but refuses to do so, may enter into a
 contract with such tort-feasor or any insurer on his or her behalf or both, whereby, in consideration
 of the payment of a specified amount, the person asserting the claim agrees that in the event of a
 judgment against the tort-feasor, neither such person nor any other person, firm, or corporation
 claiming by or through him or her will levy execution, by garnishment or as otherwise provided by
 law, except against the specific assets listed in the contract and except against any insurer which
 insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from
 execution, garnishment or other legal procedure by such contract. Execution or garnishment
 proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the
 contract or the insurer or insurers not excluded in such contract. Such contract, when properly
 acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any
 county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in
 both such counties, and if the same is so recorded then such tort-feasor’s property, except as to the
 assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any
 judgment rendered against the tort-feasor, arising out of the transaction for which the contract is
 entered into.

 2. Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into
 a contract under this section, the insurer or insurers shall be provided with written notice of the
 execution of the contract and shall have thirty days after receipt of such notice to intervene as a
 matter of right in any pending lawsuit involving the claim for damages.

§ 537.065.1 & .2.

 7
lawsuit with the same rights of any other party.” Id. at 824 (citing City of St. Joseph v. Hankinson,

312 S.W.2d 4, 7 (Mo. 1958) (“Upon being permitted to intervene, [intervenor] became a

defendant . . . entitled to raise any legitimate defenses which came within the general scope of the

original suit, and which the original defendants might have raised.”); Martin v. Busch, 360 S.W.3d

854, 858 (Mo. App. E.D. 2011) (“Upon intervention, the rights and responsibilities of [Intervenor]

will be the same as any other party to the litigation.”)).

 ICC asserts that by seeking Rasmussen’s deposition, it was simply seeking to conduct

discovery concerning information relevant to the subject matter of the pending action as permitted

by Rule 56.01(b)(1). “The legislature presumably recognized that, where some or all of an

insured’s personal assets are protected from execution by a § 537.065 agreement, the insured may

have little incentive to assert a vigorous defense to an injured party’s claims, and may even be

contractually prohibited from mounting a defense.” Id. at 820. “By enacting § 537.065.2, the

legislature has declared that, where the insured has entered into an agreement limiting the assets

against which a claimant may seek recovery, a liability insurance carrier has a sufficient interest

in the determination of the insured’s liability to support the insurer’s intervention in the underlying

litigation, as a matter of right.” Id. After being allowed to intervene, ICC became a party to the

lawsuit “with the same rights of any other party,” id. at 824, including the right to conduct

discovery, see Rule 56.01. “A trial court does not have discretion to deny discovery of matters

that are relevant to a lawsuit and are reasonably calculated to lead to the discovery of admissible

evidence, unless such matters are work product or privileged.” Bar Plan Mut. Ins. Co., 407 S.W.3d

at 633-34.

 We recognize that “it is well established that ‘an intervenor must accept the action pending

as he finds it at the time of intervention.’” Knight, 609 S.W.3d at 824 (quoting Martin, 360 S.W.3d

at 858 n.5). However, even though the status of the pleadings was that liability and causation for

 8
Rasmussen’s damages were not contested by any party (including ICC), the amount of

Rasmussen’s damages was still an unresolved factual issue and ICC should not have been

restricted by the trial court in conducting discovery on that issue.

 Conversely, though the trial court erred in its discovery ruling, Rasmussen relented on

enforcement of the trial court’s ruling and did not object to interrogatories and requests for

production of documents that were served upon Rasmussen by ICC and, instead, answered ICC’s

request for discovery. Likewise, Rasmussen’s principal witnesses on monetary damages were a

life care plan expert and a medical expert. In the depositions of these witnesses that were entered

into evidence at trial, ICC’s counsel was permitted without objection to extensively cross-examine

these witnesses. And, at trial, ICC was permitted the opportunity to examine any of the witnesses

called by Rasmussen but chose not to do so. Further, ICC was given the opportunity to present

evidence of its own, but again, chose not to do so.

 Not so coincidentally, then, ICC’s point on appeal is devoid of any argument that the trial

court’s discovery ruling resulted in prejudice. Instead, only after Rasmussen pointed out the

deficiency in ICC’s point relied on in its Respondent’s Brief did ICC argue for the first time in its

Reply Brief that it was prejudiced by the trial court’s discovery ruling. “[ICC’s] argument is not

preserved for our review, as it is not within the scope of any of their points on appeal, and was

raised for the first time in Appellants’ Reply Brief.” Med. Plaza One, LLC v. Davis, 552 S.W.3d

143, 158 n.9 (Mo. App. W.D. 2018) (citations omitted). However, even assuming, arguendo, that

the argument had been preserved, the record that we have itemized above does not suggest that the

trial court’s challenged discovery ruling materially affected the merits and outcome of the case.

 Having not argued that it was prejudiced by the trial court’s ruling, nor demonstrated in its

point on appeal that it was prejudiced by the trial court’s discovery ruling, ICC’s point on appeal

must fail.

 9
 Accordingly, Point I is denied.

 Point II

 In ICC’s second point on appeal, it asserts that the trial court erred when it awarded

Rasmussen punitive damages on her statutory dram shop liability claims. ICC argues that the

Dram Shop Act does not permit the recovery of punitive damages. We disagree.

 Standard of Review

 “‘Statutory interpretation is a question of law and is subject to de novo review.’” Area 5

Pub. Def. Office v. Kellogg, 610 S.W.3d 383, 387 (Mo. App. W.D. 2020) (quoting Henry v.

Piatchek, 578 S.W.3d 374, 378 (Mo. banc 2019)). “‘This Court’s primary rule of statutory

interpretation is to give effect to legislative intent as reflected in the plain language of the statute

at issue.’” Id. (quoting Karney v. Dep’t of Labor & Indus. Rels., 599 S.W.3d 157, 162 (Mo. banc

2020)). Accordingly:

 We will look beyond the plain meaning of the statute only when the language is
 ambiguous or would lead to an absurd or illogical result.

 A statute is ambiguous when its plain language does not answer the current dispute
 as to its meaning. Ambiguities in statutes are resolved by determining the intent of
 the legislature and by giving effect to its intent if possible. When determining the
 legislative intent of a statute, no portion of the statute is read in isolation, but rather
 the portions are read in context to harmonize all of the statute’s provisions. Rules
 of statutory construction are used to resolve any ambiguities if the legislative intent
 is undeterminable from the plain meaning of the statutory language.

Id. at 388 (quoting Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co., 597 S.W.3d 362, 367 (Mo.

App. W.D. 2020)). “It is presumed that every word, clause, sentence and provision of a statute

have effect and that idle verbiage or superfluous language was not inserted into a statute.” State

ex rel. Killingsworth v. George, 168 S.W.3d 621, 625 (Mo. App. E.D. 2005). “‘Because each word

of a statute is presumed to have been included for a particular purpose, an interpretation rendering

statutory language redundant or without meaning is disfavored.’” Sun Aviation, Inc. v. L-3

 10
Commc’ns Avionics Sys., Inc., 533 S.W.3d 720, 726 (Mo. banc 2017) (quoting Matthew Davis,

Note, Statutory Interpretation in Missouri, 81 MO. L. REV. 1127, 1136 (2016)). “The legislature

is presumed to have intended every word, provision, sentence, and clause in a statute to be given

effect.” State ex rel. Goldsworthy v. Kanatzar, 543 S.W.3d 582, 585 (Mo. banc 2018). “Courts

never presume that our legislature acted uselessly and should not construe a statute to render any

provision meaningless.” T.V.N. v. Mo. State Highway Patrol Crim. Just. Info. Servs., 592 S.W.3d

74, 81 (Mo. App. W.D. 2019) (internal quotation marks omitted).

 Of significance to our ruling today, “[t]he legislature is presumed to have acted with a full

awareness and complete knowledge of the present state of the law, including judicial and

legislative precedent.” Exec. Bd. of Mo. Baptist Convention v. Mo. Baptist Univ., 569 S.W.3d 1,

18 (Mo. App. W.D. 2019) (emphasis added). And, “[w]hen the legislature amends a statute, it is

presumed that its intent was to bring about some change in the existing law.” Rinehart v. Laclede

Gas Co., 607 S.W.3d 220, 227 (Mo. App. W.D. 2020). “This Court should never construe a statute

in a manner that would moot the legislative changes, because the legislature is never presumed to

have committed a useless act.” Id.

 Analysis

 To address ICC’s point, a brief history of the evolution of Missouri’s dram shop law is

necessary.4 In 1919, the same year the Eighteenth Amendment to the United States Constitution5

was ratified, Missouri passed the first Dram Shop Act, providing a statutory cause of action against

a seller of liquor for injuries to person or property caused by an intoxicated person. 1919 Mo.

Laws, Intoxicating Liquors, § 6 at 408, 411. Following the ratification of the Twenty-first

 4
 A “dram shop” is described in section 537.053.2 as “any person licensed to sell intoxicating liquor by the
drink for consumption on the premises.”
 5
 The Eighteenth Amendment prohibited the manufacture, sale, or transportation of intoxicating liquors.

 11
Amendment repealing prohibition in 1933, the Missouri legislature repealed Missouri’s Dram

Shop Act in 1934. § 4487 RSMo 1929 (repealed 1933-34 Laws of Missouri, 77.) “The repeal of

the dram shop act did not alter the common law; instead, the repeal of the dram shop act restored

questions of dram shop liability to the arena of the common law and the transfiguring touch of the

courts.” Lambing v. Southland Corp., 739 S.W.2d 717, 718 (Mo. banc 1987).

 In 1983, in Carver v. Schafer, 647 S.W.2d 570 (Mo. App. E.D. 1983), a wrongful death

action, the Eastern District of this Court extended liability under common law concepts to tavern

owners who serve obviously intoxicated patrons, finding that tavern owners had a duty to refrain

from serving obviously intoxicated patrons and imposing liability for injuries resulting from a

breach of that duty. Id. Our Supreme Court has described Missouri’s common law involving dram

shop liability as follows:

 Until 1983, the common law in Missouri did not recognize a cause of action against
 a tavern owner by a person injured by an intoxicated tavern patron. In 1983,
 however, the Court of Appeals, Eastern District, found a common law duty in
 tavern owners to refrain from serving intoxicated patrons and imposed liability for
 injuries resulting from a breach of that duty. Carver v. Schafer, 647 S.W.2d 570
 (Mo. App. 1983). The court found that Section 311.310 is “indicative of Missouri
 public policy”, a public policy which is expressed “even more fundamentally in the
 general law of torts.” Carver, 647 S.W.2d at 575. The Court reasoned that under
 the general law of torts, “[e]very person is required to take ordinary care against
 injuries reasonably to be anticipated.” Id. This standard of ordinary care “imposed
 a duty upon [the tavern owner] to avoid supplying [the tavern patron] with
 intoxicating liquor once it became apparent that [the tavern patron] was
 intoxicated.” Id. The court determined that “the well-documented foreseeability
 of accidents caused by drunken drivers and the statutory policy expressed in
 sec. 311.310”, id., justify the extension of liability under common law concepts to
 tavern owners who serve intoxicated patrons.

Lambing, 739 S.W.2d at 719 (emphasis added). In Lambing, our Supreme Court did not suggest

that the Eastern District in Carver misstated the law; to the contrary, our Supreme Court recognized

that, as of 1983, Missouri’s common law “recognized a common law cause of action against a

 12
tavern owner who served alcohol to an intoxicated patron who subsequently injured a third

person.” Id.6

 In 1985, with “complete knowledge of the present state of the law,” Exec. Bd. of Mo.

Baptist Convention, 569 S.W.3d at 18, the Missouri legislature enacted section 537.053.7

Section 1 of the law purportedly re-established the common law of England (that the consumption

of alcohol and not the furnishing of alcohol was the proximate cause of injuries inflicted by

intoxicated persons) regarding dram shop liability, and section 2 abrogated the Carver, 647 S.W.2d

570, Sampson v. W.F. Enterprises, Inc., 611 S.W.2d 333 (Mo. App. W.D. 1980), and Nesbitt v.

Westport Square, Ltd., 624 S.W.2d 519 (Mo. App. W.D. 1981)8 decisions that were contrary to

 6
 Other cases pre-dating Carver v. Schafer, 647 S.W.2d 570 (Mo. App. E.D. 1983), based liability of tavern
owners on the violation of a criminal statute. See Sampson v. W.F. Enterprises, Inc., 611 S.W.2d 333, 337 (Mo. App.
W.D. 1980) (A violation of section 311.310 “gives rise to a cause of action [against tavern owners] for civil
damages.”); see also Nesbitt v. Westport Square, Ltd., 624 S.W.2d 519 (Mo. App. W.D. 1981). However, “Carver is
the first case extending liability [against tavern owners] on common law concepts.” Lambing v. Southland Corp., 739
S.W.2d 717, 719 n.1 (Mo. banc 1987).
 7
 The 1985 law provided:

 1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933-34, extra session,
 page 77), it has been and continues to be the policy of this state to follow the common law of
 England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the
 common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted
 by intoxicated persons.

 2. The legislature hereby declares that this section shall be interpreted so that the holdings in cases
 such as Carver v. Schafer, 647 S.W.2d 570 (Mo. App. 1983); Sampson v. W.F. Enterprises, Inc.,
 611 S.W.2d 333 (Mo. App. 1980); and Nesbitt v. Westport Square, Ltd., 624 S.W.2d 519 (Mo. App.
 1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic
 beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries
 inflicted upon another by an intoxicated person.

 3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on
 behalf of any person who has suffered personal injury or death against any person licensed to sell
 intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310,
 RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the
 conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an
 obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the
 personal injury or death sustained by such person.
 8
 See supra note 6.

 13
that common law.9 § 537.053.1 & .2 RSMo 1985. Section 3 provided a cause of action against a

dram shop, but only if the dram shop was first criminally convicted of serving a minor or

intoxicated person. § 537.053.3 RSMo 1985. The constitutionality of section 537.053 RSMo

1986 was upheld in Simpson v. Kilcher, 749 S.W.2d 386 (Mo. banc 1988).10

 But in Kilmer v. Mun, 17 S.W.3d 545 (Mo. banc 2000), the Missouri Supreme Court

overruled Simpson and held that the 1985 statute, authorizing a dram shop cause of action only

when the liquor licensee had been convicted for providing liquor to an intoxicated person, violated

the open courts provision of the Missouri Constitution because it was an arbitrary and unreasonable

procedural bar to “an injury that is legally recognized, as the dram shop injury is [so] recognized.”

Id. at 554. The Kilmer court also applied the fundamental rule of statutory construction that

subsections of the statute must not be read in isolation, see BASF Corp. v. Dir. of Revenue, 392

S.W.3d 438, 444 (Mo. banc 2012) (“[N]o portion of the statute is read in isolation, but rather the

portions are read in context to harmonize all of the statute’s provisions.”); King v. Burwell, 135

S.Ct. 2480, 2489 (2015) (“Our duty, after all, is ‘to construe statutes, not isolated provisions.’”)

(internal citation omitted), in making its determination that section 537.053.1 RSMo 1986, which

purported to eliminate dram shop liability, actually did not, stating as follows:

 [I]f subsections 1 and 2 of section 537.053 were the whole statute, we would accept
 the obvious proposition that the legislature had indeed abolished dram shop
 liability. But, the first two subsections cannot be read in isolation. When we read
 the third subsection, which is section 537.053.3, as part of the whole statute, it is
 clear that the legislature did not abolish dram shop liability.

 9
 As we have stated previously, any suggestion that subsection 2 was “redundant” or “superfluous” ignores
this Court’s responsibility to presume just the opposite—that “each word of a statute is presumed to have been included
for a particular purpose.” Sun Aviation, Inc. v. L-3 Commc’ns Avionics Sys., Inc., 533 S.W.3d 720, 726 (Mo. banc
2017).
 10
 However, our Missouri Supreme Court specifically concluded that section 537.053 RSMo 1986 could not
be given retrospective application to common law dram shop liability claims that arose before the statute’s effective
date. Lambing, 739 S.W.2d at 718. Hence, common law dram shop liability claims that arose after the decision in
Carver but before the effective date of section 537.053 RSMo 1986 were allowed to proceed. Id. at 717 (allowing
wrongful death dram shop liability claim against a tavern owner for the sale of alcohol to an obviously intoxicated
patron to proceed when the accident occurred after the decision in Carver but before section 537.053 RSMo 1986
took effect); Elliot v. Kesler, 799 S.W.2d 97 (Mo. App. W.D. 1990) (same).

 14
Kilmer, 17 S.W.3d at 551 (emphasis added).

 The legislature responded to Kilmer and amended the Dram Shop Act in 2002.11 And,

“[w]hen the legislature amends a statute, it is presumed that its intent was to bring about some

change in the existing law,” and we should “never construe a statute in a manner that would moot

the legislative changes, because the legislature is never presumed to have committed a useless act.”

Rinehart, 607 S.W.3d at 227. The 2002 amendment deleted section 537.053.2 RSMo 1985, which

had purportedly abrogated the holdings in Carver, Sampson, and Nesbitt. Though fair debate can

 11
 The 2002 amendment provided:

 1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933-34, extra session,
 page 77), it has been and continues to be the policy of this state to follow the common law of
 England, as declared in section 1.010, to prohibit dram shop liability and to follow the common law
 rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated
 persons.

 2. Notwithstanding subsection 1 of this section, a cause of action may be brought by or on behalf
 of any person who has suffered personal injury or death against any person licensed to sell
 intoxicating liquor by the drink for consumption on the premises when it is proven by clear and
 convincing evidence that the seller knew or should have known that intoxicating liquor was served
 to a person under the age of twenty-one years or knowingly served intoxicating liquor to a visibly
 intoxicated person.

 3. For purposes of this section, a person is “visibly intoxicated” when inebriated to such an extent
 that the impairment is shown by significantly uncoordinated physical action or significant physical
 dysfunction. A person’s blood alcohol content does not constitute prima facie evidence to establish
 that a person is visibly intoxicated within the meaning of this section, but may be admissible as
 relevant evidence of the person’s intoxication.

 4. Nothing in this section shall be interpreted to provide a right of recovery to a person who suffers
 injury or death proximately caused by the person’s voluntary intoxication unless the person is under
 the age of twenty-one years. No person over the age of twenty-one years or their dependents,
 personal representative, and heirs may assert a claim for damages for personal injury or death against
 a seller of intoxicating liquor by the drink for consumption on the premises arising out of the
 person’s voluntary intoxication.

 5. In an action brought pursuant to subsection 2 of this section alleging the sale of intoxicating
 liquor by the drink for consumption on the premises to a person under the age of twenty-one years,
 proof that the seller or the seller’s agent or employee demanded and was shown a driver’s license
 or official state or federal personal identification card, appearing to be genuine and showing that the
 minor was at least twenty-one years of age, shall be relevant in determining the relative fault of the
 seller or seller’s agent or employee in the action.

 6. No employer may discharge his or her employee for refusing service to a visibly intoxicated
 person.

 15
exist about interpreting the impact of the legislature’s decision to delete section 537.053.2 RSMo

1985, how that deletion impacted the current state of the law is less important than recognizing

what the legislature was doing in the 2002 amendment—that is, the legislature, in full recognition

and knowledge of Missouri’s history of common law on dram shop liability, was attempting to

assert itself into the common law arena to modify the common law standards (i.e., the 2002

amendment added a requirement that proof of the tavern owner’s sale of alcohol to an obviously

intoxicated patron must be proven by “clear and convincing evidence”) for imposing dram shop

liability as opposed to abrogating dram shop liability under the common law in its entirety and

creating a new or sui generis statutory cause of action. And, though the legislature could have also

changed or otherwise expressly limited the damages available for dram shop liability, it chose not

to do so.12 Our responsibility, of course, is to “enforce statutes as written, not as they might have

been written.” City of Welliston v. SBC Commc’ns, Inc., 203 S.W.3d 189, 192 (Mo. banc 2006).

 As stated previously, the first case in Missouri recognizing a common law cause of action

relating to tavern owners serving obviously intoxicated persons who subsequently injure third

persons was Carver. Carver was a wrongful death action, and the Carver court recognized that

Missouri imposed no limitation on the amount of recovery (i.e., punitive damages) in actions

against dram shop owners and no limitation on recovery for wrongful death.13 Carver, 647 S.W.2d

at 576; see also Elliot v. Kesler, 799 S.W.2d 97, 102 (Mo. App. W.D. 1990) (“The holding of the

court in Carver v. Schafer recognized a right to hold a tavern owner liable for serving liquor to an

 12
 The 2002 amendment makes discrete changes to the cause of action recognized in Carver: heightening
the burden of proof; defining “visible intoxication”; denying recovery in most instances to the intoxicated person
themselves; and specifying the relevance of blood-alcohol testing and the intoxicated person’s presentation of false
identification. But despite these targeted modifications to the common law, the 2002 amendment does not
comprehensively define a stand-alone statutory cause of action, and says nothing concerning the damages recoverable
on a dram shop claim.
 13
 “Under Missouri law, in wrongful death actions, damages for aggravating circumstances, which are the
‘equivalent of punitive damages,’ are recoverable.” Robinson v. Mo. State Highway & Transp. Comm’n, 24 S.W.3d
67, 81 (Mo. App. W.D. 2000) (citing § 537.090; Call v. Heard, 925 S.W.2d 840, 849 (Mo. banc 1996)).

 16
intoxicated person.”). Likewise, the Elliot court found that the trial court properly submitted

aggravating circumstances damages on plaintiffs’ common law dram shop claim.14 Elliot, 799

S.W.2d at 104.

 Hence, the common law that existed prior to both the 1985 Missouri Dram Shop Act and

the 2002 amendment to the Act recognized that punitive damages were a recoverable remedy on a

dram shop liability claim. The 2002 amendment does not mention punitive damages, but is instead

silent on the topic of punitive damages. The legislature’s silence is not without meaning. As the

Supreme Court has stated:

 This Court has consistently held that a statutory right of action shall not be deemed
 to supersede and displace remedies otherwise available at common law in the
 absence of language to that effect unless the statutory remedy fully comprehends
 and envelops the remedies provided by common law. A statutory remedy does not
 ‘comprehend and envelop’ the common law if the common law remedies provide
 different remedies from the statutory scheme. For example, if the common law
 remedy provides for punitive damages, but the statutory scheme does not, then
 the common law scheme is not preempted.

Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 95-96 (Mo. banc 2010) (emphasis added).

 “[N]o statute should be construed to alter the common law further than the words import.”

Estate of Williams v. Williams, 12 S.W.3d 302, 307 (Mo. banc 2000) (citing Shaw v. Merchants

Nat’l Bank, 101 U.S. 557, 565, 25 L.Ed. 892 (1879)). “Where doubt exists about the meaning or

intent of words in a statute, the words should be given the meaning which makes the least, rather

than the most, change in the common law.” Id. The Missouri Supreme Court has recognized that:

 When the legislature wishes to substitute a statutory limitation on punitive or penal
 damages for what would otherwise be a common law claim, it makes specific
 provision for such limitation. The general assembly by the words it uses is perfectly
 capable of preempting claims, limiting punitive damages or granting immunity.
 There is no need for courts to infer a limitation, preemption or immunity where the
 legislature did not say so. “To read words or concepts into our statutes that the

 14
 “Aggravating circumstance damages are punitive in nature. It is their purpose to punish the defendant and
deter future wrongdoing. They are in that respect akin to punitive damages.” Elliot, 799 S.W.2d at 103 (citation
omitted).

 17
 general assembly did not write shows disrespect to both the general assembly and
 for the common law.” Overcast v. Billings Mut. Ins., 11 S.W.3d 62, 69-70 (Mo.
 banc 2000).

Id. “The common law must apply to the [Dram Shop Act] unless a statute clearly abrogates the

common law either expressly or by necessary implication.” Lindahl v. State, 359 S.W.3d 489, 493

(Mo. App. W.D. 2011). Here, of course, our Missouri Supreme Court has clarified that Missouri’s

Dram Shop Act “did not abolish dram shop liability.” Kilmer, 17 S.W.3d at 551 (emphasis added).

Accordingly, because the legislature did not clarify a different interpretation on the allowance of

punitive damages than established by common law in the dram shop liability context, punitive

damages are recoverable in a statutory dram shop cause of action.

 Point II is denied.

 Conclusion

 The trial court’s judgment is affirmed.

 /s/ Mark D. Pfeiffer
 Mark D. Pfeiffer, Presiding Judge

Alok Ahuja and Karen King Mitchell, Judges, concur.

 18